MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2022 ME 47
Docket:        Cum-21-254
Argued:        May 11, 2022
Decided:       August 30, 2022

Panel:         STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE JJ., and HUMPHREY, A.R.J.*

# STATE OF MAINE

v.

# JOSHUA BEELER

CONNORS, J.

[¶1] Joshua Beeler appeals from a judgment of conviction of criminal OUI with one previous OUI offense (Class D), 29-A M.R.S. § 2411(1-A)(B)(1), (5)(B) (2022), and violation of condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2022), entered by the trial court (Cumberland County, *Warren, J.*) after a jury trial. Beeler contends that the trial court abused its discretion by admitting his breath test result pursuant to 29-A M.R.S. § 2431 (2018)[1] because (1) the State's

---

* Justice Humphrey sat at oral argument and participated in the initial conference while he was an Associate Justice and, as directed and assigned by the Chief Justice, is now participating in this appeal as an Active Retired Justice.

[1] While this matter was pending in the trial court and again during the pendency of this appeal, the Legislature amended 29-A M.R.S. § 2431. *See* P.L. 2019, ch. 368, §§ 1, 2 (effective Sept. 19, 2019) (codified at 29-A M.R.S. § 2431(2)(A), (C) (2022)); P.L. 2021, ch. 204, § 1 (effective Oct. 18, 2021) (codified at 29-A M.R.S. § 2431(2)(B) (2022)). Although the amendments do not affect our analysis, we nevertheless determine which version of the statute applies. Citing *Carignan v. Dumas*, 2017 ME 15, ¶ 18, 154 A.3d 629, Beeler contends that the statute in effect at the time of trial is the operative version because section 2431 sets out "procedural or remedial" provisions. Contrary to Beeler's contention, the judicially created presumption that statutory amendments affecting

2

witnesses did not have personal knowledge of whether the simulator solution used in the Intoxilyzer was of an appropriate quality for producing a reliable test result and (2) the State did not offer evidence that the simulator solution bore a statement of the manufacturer or the Department of Health and Human Services. Beeler further contends that his right to confrontation was violated by the admission of the breath test certificate and by the admission of testimony about the stamp of approval affixed to the Intoxilyzer and the statement of the Department indicating that the simulator solution was of the composition and quality stated. We disagree with Beeler's contentions and affirm the judgment.[2] Because Beeler's sentence does not meet the mandatory minimum requirements for a conviction of criminal OUI with one previous OUI offense, however, we vacate his sentence and remand for resentencing.

---

procedure are applied retroactively and statutory amendments affecting substantive rights are applied prospectively is not relevant to pending actions. *See Riley v. Bath Iron Works Corp.*, 639 A.2d 626, 627-29 (Me. 1994). In pending actions, the legislatively created rule of construction set forth in 1 M.R.S. § 302 (2022) applies. Section 302 provides: "Actions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby." This general rule may be overcome, however, if the new legislation expressly cites section 302 or explicitly states an intent to apply to pending proceedings. *MacImage of Me., LLC v. Androscoggin Cnty.*, 2012 ME 44, ¶ 22, 40 A.3d 975. Because there is nothing in the amendments suggesting that the Legislature intended that they apply to pending proceedings, we conclude that the 2018 statute, which was in effect at the time the crime was committed, is the applicable version here. *See State v. Shepley*, 2003 ME 70, ¶¶ 9-10, 822 A.2d 1147; *State v. Dyer*, 615 A.2d 235, 236 (Me. 1992).

[2] Beeler also argues that the trial court abused its discretion by denying his motion for a mistrial after the arresting officer testified that he found a marijuana pipe in Beeler's vehicle during a post-arrest inventory search. We are not persuaded by his argument and do not address it. *See State v. Nobles*, 2018 ME 26, ¶¶ 17-18, 179 A.3d 910; *State v. Peabody*, 320 A.2d 242, 244 (Me. 1974).

## I.  BACKGROUND

[¶2]  Viewing the evidence in the light most favorable to the State, the jury rationally could have found the following facts.  *See State v. Athayde*, 2022 ME 41, ¶ 2, 277 A.3d 387.

[¶3]  On March 27, 2019, at approximately 10:51 p.m., a state trooper observed a vehicle with its hazard lights on stopped on the side of the northbound ramp of I-295 in Brunswick.  When the trooper stopped to determine whether the motorist needed assistance, Beeler exited the vehicle from the driver's side and approached the trooper.  The trooper observed that Beeler was unsteady on his feet, did not appear to be "in control of all [his] faculties," and was wearing sunglasses, which the trooper thought was "odd." The trooper also detected an odor of intoxicants coming from Beeler.  Based on these observations and Beeler's difficulty in completing field sobriety tests, the trooper formed the opinion that Beeler was under the influence of intoxicants and arrested him.  Beeler submitted to a breath test at the Cumberland County Jail.  His breath test result was .15 grams of alcohol per 210 liters of breath.

[¶4]  On May 6, 2019, Beeler was charged by complaint with one count of criminal OUI with one previous OUI offense and one count of violation of condition of release. *See* 29-A M.R.S. § 2411(1-A)(B)(1); 15 M.R.S. § 1092(1)(A).

4

He pleaded not guilty. Prior to trial, Beeler made a timely demand pursuant to 29-A M.R.S. § 2431(2)(D) for a qualified witness to testify as to the materials used in producing his breath test result.

[¶5] The court held a two-day jury trial on July 19 and 20, 2021, on the OUI charge.[3] The State's evidence consisted of testimony of the trooper, testimony of the chemist from the Department of Health and Human Services who manages the state laboratory's breath testing program, a portion of a video from the cruiser's recording system, and the certified breath test result.

[¶6] The trooper testified that he is a certified Intoxilyzer operator and that he followed proper breath testing procedures. He further testified that a sticker from the Department indicating that the instrument had been approved for use was affixed to the Intoxilyzer used to measure Beeler's breath alcohol.

[¶7] The chemist testified extensively about the functioning of the Intoxilyzer, procedures at the state laboratory, and Beeler's breath test. She testified that the Department requires that every Intoxilyzer in the state be tested semiannually. If that testing shows that an Intoxilyzer is accurate and reliable, then the instrument is approved and a sticker with the approval date

---

[3] Before the trial began, Beeler stipulated that he had a qualifying prior OUI offense and that he was on bail when he was arrested.

is affixed to the Intoxilyzer. She testified that Beeler's breath test was performed on an Intoxilyzer that had been loaned to the Cumberland County Jail by the state laboratory and that the instrument had been approved before it was put into service.[4] When the Intoxilyzer was returned to the laboratory sometime after Beeler's breath test, it passed all calibration checks.

[¶8] The chemist testified that before an Intoxilyzer takes a person's breath sample, the Intoxilyzer runs a series of internal diagnostic tests. One of these tests is a calibration check that uses a breath simulator that contains a solution with a known concentration of ethanol. Intoxilyzers approved for use in Maine use a known concentration of ".09," which is unique.[5] The .09 value is programmed into the Intoxilyzer at the laboratory and is password protected. If the Intoxilyzer is working properly, then it will read the concentration of the solution to within .01 of the known value of .09. *See* 10-144 C.M.R. ch. 269, § 1(2) (effective Sept. 1, 2010). If the Intoxilyzer does not pass the calibration check, then the Intoxilyzer will not allow the breath test to proceed.

---

[4] The chemist testified that the Intoxilyzer assigned to the Cumberland County Jail was taken out of service for repairs and that the state laboratory provided the jail with a loaner instrument. She further testified that loaned Intoxilyzers must undergo the same approval process as assigned Intoxilyzers.

[5] The chemist testified that Maine is the only state that uses a .09 concentration. She explained that some states use other concentrations—most commonly, .08, .07, or .15; some states do not perform calibration checks at all; and some states use ethanol gas instead of a simulator solution.

6

[¶9] The chemist testified that the state laboratory produces the solution used in the breath test simulator and that its production requires technical knowledge, laboratory grade glassware, and laboratory grade water. Each bottle of solution is affixed with a label indicating that it was approved by the Department. The solution is provided to Maine law enforcement agencies that request it. The law enforcement agency's site coordinator—a person selected by the agency to perform tasks related to the Intoxilyzer—changes the simulator solution in the Intoxilyzer as needed. The chemist testified that she did not have any personal knowledge of what solution was used to generate Beeler's test result.

[¶10] Upon reviewing each step in the breath testing sequence as reflected on Beeler's breath test certificate, the chemist opined that the Intoxilyzer passed all internal diagnostic tests and produced a valid test report. The State offered the breath test certificate, and the court admitted it over Beeler's objection. At the end of the trial, the jury returned a verdict of guilty on the OUI charge, and the court entered a judgment of conviction on the complaint as charged.[6] Beeler timely appeals.

---

[6] On the OUI, the court sentenced Beeler to fourteen days in jail and imposed a $700 fine, plus fees and surcharges. The court also ordered the suspension of Beeler's license for three years. Beeler received a concurrent seven-day jail sentence for the bail violation.

## II. DISCUSSION

**A.    The breath test result was admissible pursuant to 29-A M.R.S. § 2431.**

[¶11]  Beeler argues that the trial court abused its discretion by admitting his breath test result because the State failed to meet the requirements of 29-A M.R.S. § 2431.  He invokes two subsections of the statute.  First, Beeler contends that the State failed to satisfy section 2431(2)(C)(2) because neither the trooper nor the chemist had personal knowledge of whether the "proper solution" was used in the Intoxilyzer.  Second, Beeler contends that the State failed to satisfy section 2431(2)(K) because neither the trooper nor the chemist testified that the simulator solution "bore a statement" of the Department establishing "that the materials were of the composition and quality stated."

[¶12]  "We review questions of statutory interpretation de novo."  *State v. Tozier*, 2015 ME 57, ¶ 6, 115 A.3d 1240.  "When interpreting a statute, we look first to the plain meaning in order to discern legislative intent, viewing the relevant provision in the context of the entire statutory scheme to generate a harmonious result."  *Id.* (quotation marks omitted).  We review a trial court's "admission of evidence over an objection for lack of foundation for an abuse of discretion" and review the trial court's "underlying factual findings for clear error."  *State v. Williamson*, 2017 ME 108, ¶ 17, 163 A.3d 127 (quotation marks

omitted); *see also State v. Poulin*, 1997 ME 160, ¶ 13, 697 A.2d 1276 ("A trial court's determination of the reliability of test results is a question of fact and is reviewed for clear error.").

1. **For a breath test result to be admissible, the State need only make a foundational showing that the test result is reliable and need not offer evidence establishing the elements listed in section 2431(2)(C).**

[¶13] Title 29-A M.R.S. § 2431 sets forth evidentiary rules governing the admission of breath test results in OUI cases. The statute provides that "[a] person qualified to operate a self-contained, breath-alcohol testing apparatus"—such as an Intoxilyzer—"may issue a certificate stating the results of the analysis." 29-A M.R.S. § 2431(2)(B). The certificate, when duly signed and sworn, is prima facie evidence that, inter alia, the "[m]aterials used in the taking of the [breath sample] were of a quality appropriate for the purpose of producing reliable test results." *Id.* § 2431(2)(C)(2). Unless the defendant timely requests that a qualified witness testify to the matters of which the certificate constitutes prima facie evidence, the certificate may be admitted as prima facie evidence of the defendant's alcohol level without the need for testimony. *Id.* § 2431(2)(C), (D), (G); *Tozier*, 2015 ME 57, ¶ 7, 115 A.3d 1240.

[¶14] When a defendant requests a qualified witness, however, as Beeler did, the certificate no longer constitutes prima facie evidence of the matters set

forth in section 2431(2)(C) that are identified by the defendant in his demand. 29-A M.R.S. § 2431(2)(D). Instead, the State must establish the reliability of the test result through witness testimony. *See Tozier*, 2015 ME 57, ¶ 12, 115 A.3d 1240 (stating that section 2431 concerns "evidentiary alternatives in OUI cases"). Satisfaction of each element listed in section 2431(2)(C) is not a prerequisite for admitting the breath test result, however. *See id.* ¶ 13; *State v. Kennedy*, 2002 ME 5, ¶ 9, 788 A.2d 174. The State need establish only that the test result is reliable. *See Poulin*, 1997 ME 160, ¶ 13, 697 A.2d 1276; *State v. McConvey*, 459 A.2d 562, 567-68 (Me. 1983) (discussing the predecessor statute to section 2431). "In making the initial reliability determination, the court can rely solely on the testimony of the State's chemist that the result was reliable . . . ." *State v. Pineo*, 2002 ME 93, ¶ 6, 798 A.2d 1093. Once the foundational showing of reliability has been made and the test result is admitted, the weight to be given the test result is a question for the fact finder. *Id.*; *see also State v. Pike*, 632 A.2d 132, 133 (Me. 1993); *State v. Jordan*, 575 A.2d 309, 310 (Me. 1990); *State v. Pickering*, 462 A.2d 1151, 1156 (Me. 1983).

[¶15] Thus, the relevant inquiry here is whether the trial court erred by finding that the State had made a sufficient showing that Beeler's breath test result was reliable. We discern no error. The chemist testified at length about

the functioning of Intoxilyzers generally—including that an Intoxilyzer will not proceed with a breath test if it fails any of its internal diagnostic tests—and about the procedures at the state laboratory regarding the maintenance and approval of Intoxilyzers. The chemist also testified about the Intoxilyzer used in Beeler's breath test, noting that the instrument had been approved before it was put into service and that it passed all testing when it was returned to the state laboratory. After addressing each step in the breath testing sequence as reflected on Beeler's breath test certificate and determining that the Intoxilyzer passed all internal diagnostic tests and calibration checks, the chemist opined that the Intoxilyzer produced a valid test result. The chemist's testimony alone was sufficient to establish that Beeler's breath test result was reliable, and the chemist's testimony coupled with the trooper's testimony—including that he was a certified Intoxilyzer operator, he followed proper breath testing procedures, and the Intoxilyzer bore the Department's stamp of approval—was more than sufficient.

> **2.    When the State offers expert testimony regarding the functioning of a self-contained, breath-alcohol apparatus pursuant to section 2431(2)(K), the expert witness's testimony does not have to satisfy paragraphs H and I.**

[¶16]    As noted above, 29-A M.R.S. § 2431 concerns "evidentiary alternatives in OUI cases." *Tozier*, 2015 ME 57, ¶ 12, 115 A.3d 1240. When a

defendant requests a qualified witness pursuant to section 2431(2)(D), the evidentiary alternatives set forth in section 2431(2)(K) are triggered. *Tozier*, 2015 ME 57, ¶ 15, 115 A.3d 1240. Paragraph K provides: "The prosecution is not required to produce expert testimony regarding the functioning of [a] self-contained breath-alcohol testing apparatus before test results are admissible, if sufficient evidence is offered to satisfy paragraphs H and I."

[¶17] Paragraphs H and I allow the State to offer, through fact witnesses, prima facie evidence establishing the reliability of the breath test result. *See Prima Facie Evidence*, Black's Law Dictionary (11th ed. 2019) (defining "prima facie evidence" as "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced"). Evidence that the breath testing equipment bore a stamp of approval from the Department is "prima facie evidence that the equipment was approved by the Department." 29-A M.R.S. § 2431(2)(H). Similarly, evidence that the materials used in operating or checking the operation of the equipment bore a statement of the manufacturer or the Department is "prima facie evidence that the materials were of the composition and quality stated." 29-A M.R.S. § 2431(2)(I). In other words, evidence that the Intoxilyzer bore the Department's stamp of approval and that the simulator solution bore a statement of the manufacturer or the

12

Department is sufficient to establish a rebuttable presumption that the Intoxilyzer was functioning properly.

[¶18] In the alternative, paragraph K allows the State to offer expert witness testimony "regarding the functioning of [the] self-contained breath-alcohol testing apparatus." 29-A M.R.S. § 2431(2)(K); *see also Williamson*, 2017 ME 108, ¶ 18, 163 A.3d 127. Beeler argues that paragraph K requires that the State's expert witness's testimony satisfy paragraphs H and I. "In interpreting a statute, our single goal is to give effect to the Legislature's intent in enacting the statute. To determine that legislative intent, we first look to the plain language of the provision[] to determine [its] meaning." *State v. Hastey*, 2018 ME 147, ¶ 23, 196 A.3d 432 (citation and quotation marks omitted). By its plain terms, paragraph K does not require that the State's expert witness testify about the matters contained in paragraphs H and I; rather, it requires only that the expert witness testify about the functioning of the breath test instrument. If the Legislature's intention had been as Beeler contends, then the Legislature would have expressly said so. *See McConvey*, 459 A.2d at 568. A plain reading of paragraph K gives effect to the legislative intent that a breath test result is admissible if the State establishes its reliability, whether that is through fact witness testimony that the Intoxilyzer and

materials bore the requisite stickers or expert witness testimony about the functioning of the Intoxilyzer. Because the State offered expert witness testimony that the Intoxilyzer used here was functioning properly and produced a valid test result, that test result was properly admitted pursuant to section 2431(2)(K).[7]

**B. Admission of evidence about the "sticker" on the Intoxilyzer, the breath test certificate, and the "stamp" on the simulator solution did not violate the federal Confrontation Clause.**

[¶19] Beeler argues that his right to confrontation was violated by the admission of evidence about the "sticker" on the Intoxilyzer, the breath test certificate, and the "stamp" on the simulator solution. We review the application of the Confrontation Clause de novo. *Tozier*, 2015 ME 57, ¶ 16, 115 A.3d 1240.

---

[7] Beeler's argument put another way asserts that if the State's fact witnesses do not testify that the Intoxilyzer and the simulator solution bore the requisite stickers, then the State's expert witness must. Beeler relies in part on M.R. Evid. 602 to argue that the State's expert witness here was not qualified to testify because she lacked personal knowledge about the simulator solution used in Beeler's breath test. Beeler ignores a relevant provision in M.R. Evid. 602, which states that the "rule is subject to the provisions of [M.R. Evid. 703], relating to opinion testimony by expert witnesses." Because an expert witness's opinion need not be based on personal knowledge, *see* M.R. Evid. 703, Beeler's contention that 29-A M.R.S. § 2431(2)(K) required the chemist to testify based on her personal knowledge that the simulator solution bore a statement of the Department is contrary to the rules of evidence. *See State v. Conroy*, 2020 ME 22, ¶ 19, 225 A.3d 1011 (stating that the Court avoids "absurd, illogical, or inconsistent results" when determining the meaning of a statute based on its plain language).

14

[¶20]   The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.[8]  One of the principal concerns at which the Confrontation Clause is directed is the "use of *ex parte* examinations as evidence against the accused."  *Crawford v. Washington*, 541 U.S. 36, 50 (2004).  Thus, the Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."  *Id.* at 53-54.  Only testimonial statements are subject to exclusion by the Confrontation Clause.  *Davis v. Washington*, 547 U.S. 813, 821 (2006).

[¶21]   A testimonial statement is "typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact."  *Crawford*, 541 U.S. at 51 (alteration and quotation marks omitted).  A "core class of testimonial statements" includes

> material such as affidavits, custodial examinations, prior testimony
> that the defendant was unable to cross-examine, or similar pretrial

---

[8]  Beeler has asserted and developed his constitutional claim based only on the United States Constitution and not on the Maine Constitution.  *Cf. State v. Maga*, 96 A.3d 934, 937-38 (N.H. 2014) (noting that, although New Hampshire ordinarily addresses state constitutional claims first and applies a different test than the one used under the federal constitution for alleged Confrontation Clause violations, the defendant failed to adequately argue that the admission of the breathalyzer certificate violated his right to confrontation under the state constitution, thus leaving only his federal claim).

statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309-10 (2009) (quotation marks omitted).

[¶22] In determining whether an out-of-court statement qualifies as "testimonial," courts look at whether the "primary purpose" of the statement is to establish or prove a fact to be used later in trial. *Bullcoming v. New Mexico*, 564 U.S. 647, 659 n.6 (2011). "When the primary purpose of a statement is not to create a record for trial, the admissibility of the statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Id.* at 669 (Sotomayor, J., concurring) (alteration, citations, and quotation marks omitted).

1. **The stamp of approval affixed to the Intoxilyzer indicating that the instrument had been approved in accordance with the Department's administrative regulations is nontestimonial.**

[¶23] Beeler contends that his right to confrontation was violated by the admission of testimony about the stamp of approval affixed to the Intoxilyzer because the "sticker" is testimonial and evidence of it was offered through a witness that lacked personal knowledge. Not all out-of-court statements,

however, create Sixth Amendment concerns. *Crawford*, 541 U.S. at 51. Business records and official records generally do not implicate the Confrontation Clause "because —having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz*, 557 U.S. at 324. For example, "[d]ocuments prepared in the regular course of equipment maintenance may well qualify as nontestimonial records." *Id.* at 311 n.1.

[¶24] The overwhelming majority of other jurisdictions have concluded that maintenance, inspection, and calibration records for the Intoxilyzer are nontestimonial in nature. *See People v. Ambrose*, 506 P.3d 57, 74 (Colo. App. 2021) ("[N]either our supreme court nor the United States Supreme Court has decided whether a certificate used to establish that an intoxilyzer machine complies with state rules and regulations is testimonial and subject to the Confrontation Clause. But all of the state courts that have considered this issue have concluded that such certificates are not testimonial and do not implicate the Confrontation Clause. We hold that the I-9000 certificate here is not testimonial . . . ."); *City of W. Fargo v. Olson*, 948 N.W.2d 15, 19 (N.D. 2020) (concluding that installation and inspection certificates for the Intoxilyzer were not testimonial); *State v. Maga*, 96 A.3d 934, 940 (N.H. 2014) ("In concluding

that the breathalyzer certificate is not a testimonial statement, we join courts in other jurisdictions that have held that breathalyzer certificates are distinguishable from the certificates at issue in *Melendez-Diaz* because their primary purpose is effective administration rather than prosecution."); *State v. Dial*, 998 N.E.2d 821, 824-25 (Ohio Ct. App. 2013) (noting with approval that "other Ohio appellate districts have found that documents prepared to demonstrate that routine maintenance, such as calibration and instrument checks, have been performed on breathalyzers are non-testimonial" (quotation marks omitted)); *Matthies v. State*, 85 So. 3d 872, 875 (Miss. Ct. App. 2011) ("Courts having occasion to consider intoxilyzer inspection, maintenance, or calibration records post-*Melendez-Diaz* have almost uniformly agreed that such records are nontestimonial in nature."); *Wimbish v. Commonwealth*, 658 S.E.2d 715, 721-22 (Va. Ct. App. 2008) ("Since *Crawford* was decided, several other jurisdictions have addressed the issue of whether similar maintenance logs are testimonial. Those courts that have held that maintenance logs are nontestimonial have generally done so for one of two reasons. One line of cases holds that maintenance logs are not testimonial because they are business records made and maintained in the ordinary course of business. A second line of cases holds that maintenance logs are not testimonial because they are not

evidence against any particular defendant. We find the analysis supporting both lines of cases persuasive." (footnote, citations, and quotation marks omitted)); *Commonwealth v. Walther*, 189 S.W.3d 570, 575 (Ky. 2006) ("Every jurisdiction but one that has considered this issue since *Crawford* has concluded that maintenance and performance test records of breath-analysis instruments are not testimonial, thus their admissibility is not governed by *Crawford*.").

[¶25] Support that the stamp of approval is nontestimonial can also be found in Maine case law addressing claims of a Sixth Amendment confrontation violation. *See, e.g.*, *State v. Ducasse*, 2010 ME 117, ¶¶ 5, 13, 8 A.3d 1252 (concluding that a blood tube manufacturer's certificate of compliance was nontestimonial for purposes of the Confrontation Clause); *State v. Tayman*, 2008 ME 177, ¶ 21, 960 A.2d 1151 (concluding that Violations Bureau docket entries are mere contemporaneous documentation of regular business activity and do not contain accusations made after the fact and in preparation for trial); *State v. Murphy*, 2010 ME 28, ¶¶ 7-8, 26, 991 A.2d 35 (holding that admission of the Secretary of State's certificate as prima facie proof that notice of suspension had been sent to the defendant did not violate the Confrontation Clause).

[¶26]  Applying the foregoing, we conclude that the sticker affixed to the Intoxilyzer indicating that it had been approved by the Department is nontestimonial.  The stamp of approval is not the functional equivalent of ex parte testimony or an affidavit, it was not created in anticipation of a particular prosecution, and it does not contain test results.  The primary purpose of the stamp of approval is to create a public record demonstrating satisfaction of agency rules requiring semiannual inspections of breath testing instruments.  No violation of the federal Confrontation Clause is committed by the admission of testimony about the stamp of approval.

**2.  Admission of a breath test certificate without witness testimony does not offend the federal Confrontation Clause where the certificate is a machine-generated result.**

[¶27]  Beeler similarly argues that his confrontation right was violated by the admission of the Intoxilyzer certificate because the certificate is testimonial.  In making such an argument, although Beeler seeks to distinguish our holding in *Tozier*, our conclusion in that decision, in which we held that—unlike the certificates in *Melendez-Diaz* and *Bullcoming* that contained forensic analysis—an Intoxilyzer certificate is nontestimonial because it merely

"reports the results generated by a self-contained breath-alcohol testing machine," squarely applies. *Tozier*, 2015 ME 57, ¶¶ 19-22, 115 A.3d 1240.[9]

### 3. Because the State did not offer evidence that the simulator solution bore a statement of either the manufacturer or the Department, the Confrontation Clause is not implicated.

[¶28]  Even though Beeler acknowledges that the State offered "no evidence whatsoever" that the simulator solution bore a statement of the manufacturer or the Department, he posits that his right to confrontation was violated by the admission of the chemist's testimony that one of her job responsibilities is affixing stickers to simulator solution bottles to indicate that the solution has been approved by the Department.  Beeler misapprehends the broad purpose of the chemist's testimony.  Her testimony regarding the functioning of the Intoxilyzer was offered *in lieu of* evidence that the simulator solution used here bore a statement of the Department.  The chemist's opinion that Beeler's breath test result was valid was based on her knowledge, training, and experience about the functioning of the Intoxilyzer and the contents of

---

[9] Even if we were to rule as Beeler asks, he would not get the relief he seeks because the trooper who administered the breath test testified at Beeler's trial, thereby satisfying the Confrontation Clause.  *See State v. Tozier*, 2015 ME 57, ¶ 21, 115 A.3d 1240 ("The officer who administered the test is the only witness who could be cross-examined about the administration of the test and whether or not the officer may have made an error."); *State v. Rickett*, 2009 ME 22, ¶ 16, 967 A.2d 671 ("When a declarant is present at trial to explain an out-of-court statement, the Confrontation Clause does not bar the statement's admission, even if the statement is testimonial.").

Beeler's breath test certificate. The Confrontation Clause is concerned with the admission of testimonial statements by declarants who are not subject to cross-examination and not with whether the prosecution offered sufficient foundational evidence to support the admission of an expert witness's opinion. *See Williams v. Illinois*, 567 U.S. 50, 75-76 (2012). For the simple reason that the State did not offer any evidence that the simulator solution bore a statement of the Department, Beeler's right to confrontation was not implicated, much less violated.

### C.     Mandatory Minimum Sentence for Criminal OUI with a Previous OUI Offense within a Ten-Year Period

[¶29]  When a person is convicted of criminal OUI with a previous OUI offense within a ten-year period, 29-A M.R.S. § 2411(5)(B)(4), (F), requires that the trial court order the suspension of the person's right to register a motor vehicle in accordance with 29-A M.R.S. § 2416(1) (2022) and order the person "to participate in the alcohol and other drug program of the Department of Health and Human Services."

[¶30]  At Beeler's sentencing, the trial court correctly stated that the mandatory minimum sentence includes a suspension of the right to register a motor vehicle, but, when the court actually imposed sentence, it did not

22

announce that requirement on the record.[10]  Furthermore, the judgment and commitment states that "the defendant's right to register a motor vehicle is suspended in accordance with [applicable statutes and the] notice of suspension incorporated herein," but the notice of suspension is silent on this legislatively mandated requirement.  Additionally, although Beeler acknowledged that, in order to restore his motor vehicle privileges, he will have to complete the Department's program for substance use disorder prevention and treatment, the judgment and commitment does not indicate that Beeler is required to participate in the program as part of his sentence as a multiple offender.  Because the judgment and commitment and the notice of suspension incorporated by reference into the judgment are missing these mandatory sentencing provisions, we vacate the sentence and remand for resentencing.

The entry is:

> Sentence vacated.  Remanded for resentencing
> to address mandatory sentencing provisions.
> Judgment affirmed in all other respects.

---

[10]  Beeler did not seek a hardship exception pursuant to 29-A M.R.S. § 2416(2) (2022).

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Joshua Beeler

Johnathan T. Sahrbeck, District Attorney, Alvah J. Chalifour, Jr., Asst. Dist. Atty., Prosecutorial District Two, Portland, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2019-20372
For Clerk Reference Only